FILED
Jun 07, 2019
03:15 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD
### (HEARD MAY 31, 2019, AT KNOXVILLE)

| | | |
|---|---|---|
| Thomas Gilbert | ) | Docket No.  2018-06-1685 |
| | ) | |
| v. | ) | |
| | ) | State File No.  33590-2016 |
| United Parcel Service, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

## Affirmed and Certified as Final

---

The employee, a package delivery driver, alleged that repeatedly climbing in and out of his work vehicle caused a gradual injury to his left knee, which he claimed aggravated a pre-existing knee condition and necessitated joint replacement surgery.  The employee previously had a work-related injury to his left knee that resulted in a settlement.  The employer denied that the need for knee replacement surgery arose primarily from a new injury but instead asserted the surgery should be covered by the medical provisions of the employee's prior settlement.  Following a trial, the court concluded the employee suffered a new and distinct gradual injury that aggravated his pre-existing condition and primarily caused the need for knee replacement surgery.  It therefore awarded medical benefits, permanent disability benefits, and certain discretionary costs, and the employer has appealed.  We affirm the trial court's order and certify it as final.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

David T. Hooper, Brentwood, Tennessee, for the employer-appellant, United Parcel Service, Inc.

Constance A. Mann, Franklin, Tennessee, for the employee-appellee, Thomas Gilbert

## Factual and Procedural Background

Thomas Gilbert ("Employee"), a resident of Williamson County, Tennessee, began working for United Parcel Service, Inc. ("Employer"), as a package delivery driver

in 1998. In 2011, Employee suffered a work-related left knee injury that resulted in surgery to repair a medial meniscal tear. He settled his claim for workers' compensation benefits in 2012, and that settlement included a provision entitling him to future medical benefits causally related to his knee injury.

In 2015, Employee returned to Dr. David Moore, his authorized treating physician for the 2011 injury, with complaints of pain and swelling in his left knee. He denied any specific injury to his knee but complained his symptoms were exacerbated by walking. According to Dr. Moore's July 23, 2015 report, "[t]he more active he is, the more it seems to bother him." Dr. Moore concluded Employee had developed moderate medial compartment osteoarthritis "directly related to his medial meniscus tear that was caused by his initial work-related injury in May of 2011." Dr. Moore recommended a series of injections, but Employee's symptoms persisted despite this treatment. In his January 7, 2016 report, Dr. Moore concluded the most recent x-rays revealed osteoarthritis that had progressed to "bone-on-bone." As a result, Dr. Moore recommended a total knee arthroplasty and referred Employee to his partner, Dr. Gregory Raab.

In Dr. Raab's April 22, 2016 report, Employee described his persistent knee symptoms and his recent activities, and Dr. Raab noted Employee was "constantly in and out of his vehicle loading and unloading." He also commented that Employee "is increasingly frustrated by his limitations, both at work and recreationally." According to Dr. Raab, x-rays revealed a "significant progression" in his osteoarthritis since January 2012. He then concluded, "the patient's arthritis has progressed even over the last six months to the point where he has bone-on-bone. I think he would benefit greatly from knee replacement surgery." The surgery was performed on August 30, 2016.

Thereafter, Employee filed a petition alleging he had suffered a gradual injury to his left knee due to "continuous trauma" when he "climbed into a UPS truck 150 to 200 times a day." In response, Employer argued there was no new injury and his need for medical treatment arose primarily from his 2011 knee injury, which was covered by the terms of the 2012 settlement.

*Medical Proof at Trial*

Employee deposed Dr. Stephen Neely, a board-certified orthopedic surgeon who conducted an independent medical examination of Employee at his request. Dr. Neely opined that the force of repeatedly climbing in and out of his work vehicle "accelerated the degeneration of his knee." He further stated, "I attribute the accelerated wear to the accelerated daily routine that this man engaged in with his knee." The following colloquy then occurred:

Q. You mentioned it accelerated the rate of development of his knee for a total knee arthroplasty. Do you believe that to a reasonable degree of medical certainty?

A. I do.

Q. Do you agree that at least 51 percent of his need for the total knee replacement was due to the continuous trauma?

A. I think he did heavy physical work and I think it was.

. . . .

Q. So the standard is we need expert medical proof that a work accident contributed more than 50 percent in causing the aggravation, and the work accident was more likely than not considering all causes. Do you believe with that standard that Mr. Gilbert sustained a continuous trauma to his left knee?

A. Yes, I do.

. . . .

Q. Do you believe that more likely than not considering all causes, the continuous trauma caused the need for the total knee replacement?

A. I think the need for the total knee replacement was a combination of pre-existing arthritis that was found in that knee that was mild in 2011, that was severe by 2015. That is an awfully quick downhill course.

Employer offered into evidence the expert testimony of Dr. Raab, the orthopedic surgeon who performed Employee's total knee arthroplasty. Dr. Raab noted that after Employee's 2011 surgery, Dr. Moore's post-operative diagnoses included arthritis. By 2015, the arthritic changes in the left knee had worsened and were described as moderate to severe. Dr. Raab commented that "there's no other indication from this note that it's anything other than progression of his arthritis." He also noted Dr. Moore's opinion that Employee's "need for a total knee arthroplasty is directly related to his meniscal injury."

During his deposition, Dr. Raab was asked his opinion regarding the cause of Employee's need for a total arthroplasty. He testified there was no "acute event" or "new trauma" that contributed to the need for surgery. He explained that since the right knee showed no significant osteoarthritis or other evidence of "wear and tear," it was

3

reasonable to conclude that the need for the left knee total arthroplasty was not related to a "wear and tear" injury but was caused directly by the natural progression of arthritic changes due to the previous medial meniscal surgery. Specifically, he opined that "the 2011 injury and the August 2011 surgery by Dr. Moore [were] more than 50 percent of the cause for [Employee] requiring a total knee replacement considering all other causes." Following the total knee arthroplasty and a period of recovery, Dr. Raab concluded Employee "would not have any permanent medical impairment."

On cross-examination, Dr. Raab testified he was not familiar with the terms "continuous trauma" or "cumulative trauma." He admitted that the act of climbing into a delivery vehicle up to 200 times a day "would be load bearing on the left or right knee, whichever knee you were lifting your body weight on." After being questioned extensively about a letter Employee's counsel sent to Dr. Moore and Dr. Moore's responses to the inquiries contained therein, Dr. Raab commented, "I don't know the relative contribution of the [August 2011] surgery and the removal [of] part of the meniscus, how that contributed to his arthritis based [on] or relative to the initial injury. I have no way of comparing that." He then testified, "if you are asking me if I can [attribute] all of this wear to his job, I would say, no, I can't, because he had a life outside of his job too that also contributed to wear. . . . I have no way of knowing, as [is] the case with any patient, which part of wear is [attributed] specifically to one particular event or cycle or repetitive activity because they're all the variables in his knee that are wearing regularly [that] are going to contribute to that."

In preparation for trial, the parties filed multiple motions in limine, one of which sought to exclude the letter Employee's counsel sent to Dr. Moore and Dr. Moore's responses to the inquiries contained therein. The trial court entered an order prior to trial granting Employer's motion to exclude the letter, reasoning that the letter was not admissible pursuant to the Tennessee Rules of Evidence or other applicable regulations. However, the court allowed the letter to remain an exhibit to Dr. Raab's deposition "for the purpose of offering context to the cross-examination of Dr. Raab and his opinion on causation."

Following the trial, the court concluded Employee had proven by a preponderance of the evidence that he suffered a compensable aggravation of his pre-existing left knee condition caused by repetitive work activities. The court further concluded Employee had rebutted a presumption of correctness attributable to Dr. Raab's opinions regarding causation and permanent medical impairment. In addition to medical benefits, the Court awarded permanent partial disability benefits and certain discretionary costs. Employer has appealed.

4

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

**Analysis**

Employer presents three issues for review, which we have combined and restated as whether the evidence preponderates against the trial court's finding that Employee suffered a gradually-occurring injury at work that aggravated his pre-existing left knee condition and primarily caused the need for the total knee arthroplasty.

We previously addressed the analysis of claims hinging on the alleged aggravation of a pre-existing condition as follows:

> Determining the compensability of an alleged work-related aggravation of a preexisting, degenerative medical condition has long been a source of difficulty under Tennessee's Workers' Compensation Law. The general assembly has, in recent years, sought to clarify this issue through statutory amendments. In 2011, the definition of "injury" was amended to provide that work-related injuries "[d]o *not* include . . . [c]umulative trauma conditions . . . unless such conditions arose primarily out of and in the course and scope of employment."
>
> Two years later, as part of the 2013 Workers' Compensation Reform Act, the general assembly again amended the definition of "injury":
>
>> "Injury" and "personal injury" mean an injury by accident, . . . or cumulative trauma conditions . . . arising

5

primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee; provided that:

(A) An injury . . . shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.

Moreover, for injuries occurring on or after July 1, 2014, the general assembly made clear that "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and this chapter shall not be construed in a manner favoring either the employee or the employer."

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0518, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *7-9 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015) (citations omitted). It is in the context of these statutory amendments that we must assess the trial court's order awarding Employee permanent partial disability benefits, on-going medical benefits, and costs.

It is well-established that, when faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept, and we will not disturb that decision absent an abuse of discretion." *Jimenez v. Xclusive Staffing of Tenn., LLC*, No. 2016-06-2377, 2017 TN Wrk. Comp. App. Bd. LEXIS 45, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2017). In the present case, the trial court chose to accept the expert medical opinion of Dr. Neely over that of Dr. Raab. In doing so, the trial court considered the credentials of each expert, the number of times each expert evaluated Employee, the circumstances of their examinations, and the information available to each expert for review. The trial court noted in particular Dr. Raab's equivocal testimony concerning his understanding of the meaning of the terms "continuous trauma" and "cumulative trauma," as well as his lack of knowledge concerning the details of Employee's work activities. It then concluded, "Dr. Neely's explanation of causation and its relatedness to work [is] plausible and more persuasive than Dr. Raab's." In considering the totality of each expert's testimony, we conclude the preponderance of the evidence supports the trial court's determination regarding the expert medical proof.

Employer also argues that Dr. Raab's causation opinion was entitled to a presumption of correctness and that the trial court erred in concluding Dr. Neely's opinion rebutted that presumption. We disagree. First, Dr. Raab was not selected from a panel of physicians, but became an authorized treating physician as the result of a referral

from Dr. Moore. Tennessee Code Annotated section 50-6-102(14)(E) makes clear that the rebuttable presumption of correctness attributable to a causation opinion applies only to such opinions expressed by a treating physician "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)." Therefore, we conclude Dr. Raab's causation opinion was not entitled to a presumption of correctness.

Second, Dr. Raab's testimony demonstrated a lack of understanding of the nature of cumulative trauma injuries and their potential impact on pre-existing conditions. He also acknowledged a lack of understanding concerning the circumstances of Employee's work or the repetitive activities in which Employee engaged on behalf of Employer. On the other hand, Dr. Neely testified unequivocally that at least fifty-one percent of the need for the total knee arthroplasty was attributable to Employee's work activities. It was within the trial court's discretion to conclude Dr. Neely's testimony expressed the more probable explanation for Employee's need for a total knee arthroplasty, and we find no abuse of discretion in that determination.[1]

Next, Employer argues that the trial court failed to consider Employee's testimony concerning the mechanics of entering and exiting the work vehicle and the impact of that testimony on the causation analysis. In essence, Employer argues that because Employee's act of exiting the vehicle using UPS's standard "three points of contact" protocol would have resulted in Employee bearing weight on his right leg, then his right knee should have shown evidence of the same "cumulative trauma" purportedly affecting his left knee. Since neither Dr. Moore nor Dr. Raab found evidence of "contralateral" (right knee) osteoarthritis, then, under Employer's theory, Dr. Neely's causation explanation must be flawed.

We disagree with Employer's argument on medical causation. There is no expert medical testimony supporting Employer's argument that the lack of arthritic changes in Employee's right knee precluded the possibility of a cumulative trauma injury in the left knee aggravating a pre-existing condition or accelerating the need for knee replacement surgery. In order to prevail on his claim, Employee must establish by a preponderance of the evidence that his need for medical treatment was more than fifty percent caused by the alleged work injury, considering all causes. *See* Tenn. Code Ann. §§ 50-6-239(c)(6), 50-6-102(14). Although Employee's prior left knee injury may have contributed to the need for a total knee arthroplasty, if a more recent cumulative trauma injury caused more than fifty percent of the need for the total knee replacement, then the prior injury's contribution is legally irrelevant.

In this case, Employee testified without contradiction that he entered his work vehicle up to 200 times per day bearing weight on his left leg. The fact that he may have

---

[1] Employer did not appeal those aspects of the trial court's order awarding certain permanent partial disability benefits, future medical benefits, and costs.

exited the vehicle using his right leg is not determinative of the causation issue. Moreover, while the pre-existing left knee condition may have contributed to the need for surgery, the totality of Dr. Neely's testimony supported the trial court's conclusion that the need for the knee replacement was more than fifty percent attributable to the cumulative trauma injury aggravating or accelerating the arthritic changes in that knee.

Finally, Employee argues that Employer's appeal is frivolous and seeks penalties and attorney's fees pursuant to Tenn. Comp. R. & Regs. 0800-02-22-.04(6). We do not find Employer's appeal to be frivolous and therefore decline to award penalties or attorney's fees.

## Conclusion

For the foregoing reasons, the trial court's Compensation Hearing Order is affirmed and certified as final. Costs on appeal are taxed to Employer.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Thomas Gilbert | ) | Docket No.  2018-06-1685 |
| | ) | |
| v. | ) | State File No.  33590-2016 |
| | ) | |
| United Parcel Service, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 7th day of June, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Constance A. Mann | | | | | X | cmannlaw@msn.com |
| David T. Hooper | | | | | X | dhooper@hooperzinn.com |
| Kenneth  M. Switzer, Chief Judge | | | | | X | via electronic mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov